# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

WILLIAM T. STEPHENS,

        Plaintiff,

vs.                              Case No.:   3:20-cv-70-BJD-PDB

CORIZON, LLC, et al.,

        Defendants.

_____/

## ORDER ON MOTION TO DISMISS

## I.    Status

Plaintiff William T. Stephens, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on January 24, 2020,[1] by filing a pro se Civil Rights Complaint under 42 U.S.C. § 1983. (Doc. 1, Complaint). He is proceeding on an Amended Complaint (Doc. 16, Am. Compl.), which he filed through court-appointed counsel on December 9, 2020. He sues FDOC and two medical service contractors: Corizon, LLC ("Corizon"), and Centurion of Florida, LLC ("Centurion"). Plaintiff alleges that because of a cost-saving policy, FDOC, Corizon, and Centurion failed to provide him lifesaving treatment for Hepatitis C, in violation of the Eighth Amendment, the Americans With Disabilities Act (ADA), and the Rehabilitation Act of 1973.

---

[1]    See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

Before the Court are the Defendants' motions to dismiss the Amended Complaint. (Doc. 36, Centurion Motion; Doc. 37, FDOC Motion; Doc. 40, Corizon Motion). Defendants argue that Plaintiff failed to exhaust available administrative remedies. Centurion also argues that Plaintiff failed to state a claim for relief because he has not alleged facts showing (1) that Centurion had a policy or custom of denying treatment to inmates with HCV or (2) that any policy or custom of Centurion was the "moving force" behind a constitutional violation.[2] Plaintiff responded in opposition. (Doc. 42, Response to Motions to Dismiss). FDOC filed a reply (Doc. 47, FDOC's Reply), and Plaintiff filed a sur-reply (Doc. 50, Plaintiff's Sur-Reply). The motions are ripe for review.

## II.    Plaintiff's Allegations[3]

Hepatitis C is a blood-borne disease caused by the Hepatitis C virus (HCV). HCV primarily affects the liver, and if left untreated it can lead to serious illness or death. Am. Compl., ¶¶ 15–21. Chronic HCV can cause fibrosis of the liver, which occurs when scar tissue replaces healthy liver tissue. Over time, the scar tissue – or fibrosis – can take over most of the liver, at which point the fibrosis is termed "cirrhosis." Id., ¶ 19. Extensive scarring of the liver

---

[2]    Centurion also moved to stay proceedings pending resolution of the motions to dismiss (Doc. 38, Motion to Stay), and Plaintiff responded (Doc. 43, Response to Motion to Stay).

[3]    Because this case is before the Court on Defendants' motions to dismiss, the Court accepts the complaint's allegations as true and construes them in the light most favorable to the plaintiff. Cinotto v. Delta Air Lines, Inc., 674 F.3d 1285, 1291 (11th Cir. 2012).

may not only cause additional complications like kidney disease, but it can also increase the risk of liver cancer. People who have human immunodeficiency virus (HIV) in addition to HCV are at higher risk of rapidly developing liver disease. Id., ¶ 22. According to one study, "delaying treatment for a person with HCV and HIV until they have cirrhosis increases their risk of liver related mortality by five times." Id., ¶ 23.

In 2013, a new type of drug emerged for treating HCV, called a direct-acting antiviral (DAA). Id., ¶ 24. DAA's are oral medications that have few side effects and are over 95% effective at curing HCV. Id., ¶ 25. DAA therapy has been part of the standard of care for treating HCV patients since 2014, following guidance issued by the American Association for the Study of Liver Diseases (AASLD) and the Infectious Disease Society of America (IDSA). Id., ¶¶ 26–31.

Plaintiff was long ago diagnosed with both HCV and HIV. See id., ¶¶ 40, 42. FDOC has known (or should have known) Plaintiff had HCV and HIV since he was taken into FDOC custody in 2007. Id., ¶ 40. Plaintiff alleges that FDOC's medical service providers – Corizon and Centurion – knew or should have known he had these conditions as well. See id., ¶¶ 42, 64, 72. From 2013, when DAA's became available, until October 2017, FDOC and its medical contractors failed to provide DAA's to Plaintiff and thousands of other HCV-positive inmates. Id., ¶¶ 32–33. Plaintiff alleges that FDOC, Corizon, and Centurion failed to offer DAA therapy despite knowing about DAA's and despite knowing

that DAA therapy was part of the standard of care for treating HCV. Id., ¶¶ 32, 35–37, 48–50. According to Plaintiff, from 2013 to 2016, FDOC and Corizon refused to provide DAA's to him and other inmates because FDOC and Corizon wanted to reduce costs and increase the contractor's profits. See id., ¶¶ 35–46. Plaintiff alleges that FDOC and Centurion continued the same policy after Centurion took over as FDOC's medical service provider in May 2016. See id., ¶¶ 47–57. Plaintiff states that FDOC and Centurion provided him DAA's only in October 2017, when FDOC and Centurion were sued in federal court over their failure to treat inmates who had HCV. Id., ¶¶ 34, 54.

Plaintiff asserts that Defendants' delay in treating his HCV "caused his quality of life to substantially deteriorate, and has caused permanent liver damage." Id., ¶ 58. Plaintiff is "at heightened risk for developing further symptoms [of HCV] including further advanced liver failure, liver cancer, and death." Id., ¶ 59. According to Plaintiff, "[t]he willful and deliberate acts of Defendants FDC, Corizon, and Centurion, in withholding HCV treatment for Mr. Stephens, have caused him great physical pain and mental discomfort in his daily activities of living. It has shortened his lifespan and has caused him severe emotional pain and suffering." Id., ¶ 60.

Based on these facts, Plaintiff asserts four claims in the Amended Complaint. In Counts One and Two, he alleges that Corizon and Centurion, respectively, were deliberately indifferent to a serious medical need because

they denied him necessary treatment for chronic HCV, in violation of the Eighth Amendment. Am. Compl. ¶¶ 61–68 (Count One), ¶¶ 69–76 (Count Two). In Count Three, Plaintiff asserts that FDOC discriminated against him based on his disability because it withheld medical treatment for HCV but did not withhold treatment from prisoners who had other disabilities or who were not disabled. Id., ¶¶ 77–93. Finally, in Count Four, Plaintiff alleges that FDOC violated the Rehabilitation Act by excluding him from receiving HCV treatment solely by reason of his disability. Id., ¶¶ 94–102. Plaintiff seeks a declaration that Corizon and Centurion violated Plaintiff's rights under the Eighth Amendment and that FDOC violated Plaintiff's rights under the ADA and the Rehabilitation Act. Plaintiff also seeks compensatory damages against all Defendants, punitive damages against Corizon and Centurion, attorneys' fees and costs, and any other appropriate relief.

### III.   Parties' Positions on Exhaustion

The threshold issue in this case is exhaustion. Each Defendant argues that Plaintiff failed to exhaust administrative remedies before filing the § 1983 lawsuit, as required by the Prison Litigation Reform Act (PLRA). Centurion Motion at 2, 6–9; FDOC Motion at 1, 3–6; Corizon Motion at 4–7. Specifically, Defendants argue that Plaintiff failed to comply with the time constraints imposed by FDOC's grievance procedures.

FDOC submits records showing that on March 16, 2018, Centurion began to administer a 12-week DAA treatment regimen to Plaintiff. FDOC Motion at 2; (Doc. 37-2, FDOC Exhibit 2). Centurion used a drug called Epclusa. Plaintiff completed the treatment program, and in September 2018 he was deemed cured of HCV, as reflected by a test showing undetectable levels of the virus. See id.

Plaintiff did not file a grievance regarding the denial of treatment for HCV until June 26, 2019 – more than a year after Plaintiff received DAA therapy and about nine months after he had cleared the virus. (See Doc. 37-3 [FDOC Exhibit 3] at 7, Formal Grievance No. 1906-213-145). In the grievance, Plaintiff stated:

> This is a formal medical grievance filed in accordance with the Fla. Admin. Code, Chapter 33-103.
>
> The Department's former Secretary, Julie Jones and other Central Office Personnel; the former Health Care Provider, Corizon Health Services and their personnel, the current Health Care Provider, Centurion of Florida have been deliberate[ly] indifferent to my serious medical needs, ie. (HCV)
>
> Although I was treated for the (HCV) last year, due to a Federal Court Order[4], the parties mentioned above subjected me to inadequate policies and a custom and practice of denial of 99.99% treatment for all (HCV) inmates, including Grievant was rooted in concerns of cost rather than my right to the recognized standard of care in a timely fashion. The above mentioned parties knowingly allowed the progression [of] this deadly virus to severely damage my liver and now subject me to a much greater chance (2 to 5) times higher of developing liver cancer in the future.

---

[4] The "Federal Court Order" Plaintiff was referring to was a preliminary injunction entered in November 2017 in Hoffer v. Jones, 290 F. Supp. 3d 1292 (N.D. Fla. 2017), where the district court ordered the FDOC to begin providing treatment (including DAA therapy) to inmates who were positive for HCV.

The parties mentioned above have subjected me to Cruel and Unusual Punishment in violation of my Constitutional Right under the Eighth Amendment.

Grievant request[s] that he be compensated a half-million dollars and or release[d] from incarceration from his current sentence.

Id.

On July 9, 2019, the institution responded to the formal grievance, stating:

Your request for Administrative Remedy or Appeal has been received, reviewed, and evaluated.

Inmate STEPHENS, Centurion is in compliance with the current judicial ruling; client care before Centurion was in place is not a subject we can address. If you have questions concerning your current condition, please follow the Sick-Call process that is available.

You are being treated in accordance with FDC policy and procedure.
*******************
Based on the above information, your grievance is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, and providing attachments as required by Chapter 33-103 and forwarding your appeal to the Bureau of Inmate Grievance Appeals, 501 South Calhoun St., Tallahassee, Florida, 32399-2500, within 15 calendar days of this mailed response.

Id. at 8. The institution's response was signed by E. Toledo, M.D., and T. Knox, the assistant warden of Union Correctional Institution (UCI).

On July 16, 2019, Plaintiff filed a grievance appeal to the Secretary of the FDOC. Id. at 6. The appeal was given Grievance Log Number 19-6-27311. Plaintiff stated in the appeal:

This is a Grievance Appeal on my initial medical grievance # 1906-213-145 attached, at the institutional level, in accordance to Fla. Admin. Code, Chapter 33-103. The response did not address the former Secretary Julie Jones and other Central office personnel in their part of "deliberate indifference" to my serious medical needs, ie, hepatitis C from January 2015 thru January 2018, who were responsible for the inadequate policies, as well as the custom and practice that they employed while dealing with (HCV) inmates and grievant.

[Centurion] the current health care provider, who took over in 2016. The struthious approach that both [Centurion] and Ms. Jones, her Chief Medical Advisor and the individual responsible for denying the submitted legislative proposed budget request twice, to purchase the medication, ie (DAA's)

When [Centurion] of Florida took over in 2016, the FDOC had revised the HSB [Health Services Bulletin] to finally acknowledge[] the standard of care for treating (HCV) inmates was with (DAA's). However, from the time they took over health care, [Centurion] personnel never recommended evaluation by a specialist let alone treatment per the revised policy to grievant, or any other (HCV) inmate here at U.C.I., until the Federal Court Order of November of 2017.

Because of these inactions of the parties mentioned above, knowing grievant would and had suffered severe damage to his liver, that now puts him at a far greater risk of developing liver cancer in the future, despite now having a SVR.[5] Grievant request[s] the same relief as on the initial grievance for violation of his Eighth Amendment Right.

Id.

In August 2019, the FDOC Secretary, acting through the Bureau of Inmate Grievance Appeals, returned Plaintiff's appeal without action. Id. at 5.[6]

The decision stated:

---

[5]     SVR stands for sustained viral (or virological) response. "The term is used to describe the condition of having cleared a virus on a certain date after treatment." Hoffer v. Inch, 382 F. Supp. 3d 1288, 1308 n.20 (N.D. Fla. 2019).

[6]     The FDOC Secretary established the Bureau of Inmate Grievance Appeals to receive, evaluate, and respond to all grievances and appeals filed with the FDOC Secretary. Fla.

Appeal Returned without Action:

Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure. You are grieving deliberate indifference due to a delay in treatment by Corizon Health Services and Centurion of Florida prior to you receiving treatment for HCV last year.

Please be advised that you are outside the timeframe to grieve this issue and the Institution should have returned your formal grievance.

Formal Grievances must be received no later than 15 calendar days from: 1. The date on which the informal grievance was responded to; or 2. The date on which the incident or action being grieved occurred.

Just because the Institution failed to return your formal grievance does not negate our office from returning your appeal.

Also, please be advised that you cannot use the grievance process for monetary gain and/or tort claims.

Therefore, your appeal is being returned without action.

Id.

Based on the FDOC's decision on appeal, Defendants argue that Plaintiff failed to comply with the timeliness requirements of the FDOC's grievance regulations. Because the FDOC's grievance procedures required Plaintiff to file a formal grievance within 15 calendar days from when the incident or action being grieved occurred, Fla. Admin. Code § 33-103.011(1)(b), and Plaintiff did not grieve the denial of HCV treatment until more than a year after he received DAA therapy, Defendants contend that Plaintiff did not properly exhaust his

_____

Admin. Code § 33-103.007(7). For future reference, the Court refers to the Bureau's decision as that of the FDOC Secretary.

administrative remedies.[7] In addition, Defendants submit Plaintiff's FDOC grievance records (Doc. 36-1, Centurion Ex. A; Doc. 37-3, FDOC Ex. 3; Doc. 39, Corizon Records), the declaration of Alan McManus (the Bureau Chief of FDOC's Bureau of Inmate Grievance Appeals) (FDOC Ex. 3 at 1–2), and the declaration of Sherry Shoup (a Correctional Sentence Specialist and custodian of records at UCI) (Doc. 37-4, FDOC Ex. 4). The affidavits and exhibits reflect that Plaintiff filed no grievances or appeals regarding HCV treatment other than Formal Grievance Number 1906-213-145 and Appeal Number 19-6-27311. As a result, Defendants argue that the PLRA bars the current lawsuit because Plaintiff did not properly exhaust administrative remedies.

Plaintiff counters that the Court "should reject Defendants' argument about the 15 day grievance deadline because the Defendants failed the threshold task of proving when Plaintiff first learned that he should have been receiving the treatment, which is essential for determining when the 15 day deadline expires." Response to Motions to Dismiss at 2. Plaintiff argues that lack of exhaustion is an affirmative defense, which Defendants have the burden

---

[7]     While Centurion and FDOC correctly describe this argument, Corizon's argument is less precise. Corizon correctly points out that the FDOC Secretary returned the appeal without action because Plaintiff did not comply with applicable time constraints. Corizon Motion at 2, 6–7.  But Corizon incorrectly states that the Secretary returned the appeal because the <u>appeal</u> was untimely (which is not true), when in fact the Secretary returned the appeal because the <u>original grievance</u> was untimely. That said, it is clear what Corizon intended to argue, and the Court has authority to construe its inartful argument with some liberality. <u>N.L.R.B. v. Goya Foods of Fla.</u>, 525 F.3d 1117, 1135 (11th Cir. 2008). Reconstruing Corizon's argument would not prejudice Plaintiff because Centurion and FDOC raise exactly the same exhaustion argument Corizon intended to make and Plaintiff has responded to those arguments.

of proving. Id. at 3. Relying on Roca-Moreno v. Desouza, No. 19-23688-CV-COOKE, 2020 WL 7774726 (S.D. Fla. Nov. 12, 2020), report and recommendation adopted, 2020 WL 7770402 (S.D. Fla. Dec. 30, 2020), an unpublished district court decision, Plaintiff suggests that the FDOC's 15-day deadline for filing a formal grievance incorporates a type of delayed-discovery doctrine. Response to Motions to Dismiss at 5–7. According to Plaintiff, his claim accrued, and the 15-day clock began to run, only when he learned DAA therapy had been delayed and that this delay was wrongful. Plaintiff contends that merely because he began receiving DAA therapy in March 2018 does not mean he knew then about the wrongful delay in receiving treatment. Id. at 5 n.1. Because "the Defendants' record is silent about when Plaintiff first learned that he may have been wrongly denied Hepatitis C treatment," he asserts that Defendants have not met their burden of proving a lack of exhaustion. Id. at 6. Plaintiff further argues that because the action being grieved "involves complex issues such as liver cirrhosis, ascites, pharmaceuticals, and the standard of care for Hepatitis C treatment," there "is no fixed date when all of the tortious conduct occurred … that Plaintiff Stephens should have begun counting fifteen days from to file a grievance." Id. at 6. Thus, Plaintiff argues that the Court must reject Defendant's exhaustion argument.

# IV.  Analysis

The PLRA requires that Plaintiff exhaust available administrative remedies before filing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983...until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92–93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, Plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint[ ]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones, 549 U.S. at 211. While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory... and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (citing Jones, 549 U.S. at 211). The PLRA not only requires exhaustion of administrative remedies, "the PLRA … requires proper exhaustion." Woodford, 548 U.S. at 93 (emphasis added).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Importantly, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." Id. at 1082.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific

findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) ("Whatley I"). "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015). Indeed, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218. The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

Pavao, 679 F. App'x at 824. However, the ordinary three-step procedure does not always apply. For example, a prisoner may skip the informal grievance step

and immediately file a formal grievance for issues pertaining to certain things, including medical issues and violations of the ADA. Fla. Admin. Code § 33-103.006(3)(e), (h). If a prisoner bypasses the informal grievance step, he must file the formal grievance with the warden no later than 15 calendar days from the date on which the incident or action being grieved occurred. Fla. Admin. Code § 33-103.011(1)(b). The institution must respond within 20 days of receipt of the formal grievance. Fla. Admin. Code § 33-103.006(6). "If the inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the Office of the Secretary using Form DC1-303 (same form as a formal grievance)." Jenkins v. Sloan, 826 F. App'x 833, 835 (11th Cir. 2020) (citing Fla. Admin. Code § 33-103.007). Once a prisoner successfully completes this grievance process, he is considered to have exhausted his administrative remedies. See Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004).

Here, Plaintiff did not properly complete the grievance process (or begin it, rather). He therefore did not properly exhaust administrative remedies.

## A. **Turner** Step One

At step one of Turner, the Court "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1082. "If the defendants can establish failure to exhaust based on the plaintiff's

allegations, dismissal of the complaint is appropriate." <u>Whatley v. Smith</u>, 898

F.3d 1072, 1082 (11th Cir. 2018) ("<u>Whatley II</u>") (emphasis in original) (citing

<u>Turner</u>, 541 F.3d at 1082). Even accepting Plaintiff's version of the facts as true,

dismissal is appropriate for failure to properly exhaust.

 FDOC's grievance rules require that if an inmate bypasses the informal

grievance stage to file a formal grievance (which an inmate may do for medical

issues), the formal grievance "[m]ust be received no later than 15 calendar days

from … [t]he date on which the incident or action being grieved occurred." Fla.

Admin. Code § 33-103.011(1)(b)(2). Defendants have shown, and Plaintiff does

not dispute, these facts: (1) Centurion began to treat Plaintiff for HCV with a

DAA in March 2018; (2) Plaintiff was found to have cleared the virus by

September 2018; (3) Plaintiff filed a formal medical grievance regarding the

denial of treatment for HCV on June 26, 2019, one year and three months after

he began receiving DAA therapy; (4) the institution denied the formal

grievance, after which Plaintiff filed an appeal to the FDOC Secretary; (5) the

FDOC Secretary returned the appeal without action, ruling that the original

grievance did not comply with Chapter 33-103 of the Florida Administrative

Code because Plaintiff did not file it within 15 calendar days of when the action

or incident being grieved occurred; and (6) Plaintiff has not filed any other

grievances or grievance appeals regarding the denial of treatment for HCV. (FDOC Exhibits 2, 3, 4; Centurion Exhibit A; Corizon Records).[8]

The FDOC Secretary's ruling that Plaintiff's grievance was untimely is all but controlling. FDOC is in a superior position to interpret and apply its own grievance rules, and "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218 (emphasis added); see also Dimanche, 783 F.3d at 1207 (state law "determines what steps are required to exhaust."). As the Supreme Court has explained, exhaustion under the PLRA "requires proper exhaustion," Woodford, 548 U.S. at 93, and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," id. at 90. An "untimely grievance does not satisfy the exhaustion requirement of the PLRA." Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005). Since there is no dispute that the FDOC returned Plaintiff's appeal without action, citing his failure to timely file the grievance, he has not properly exhausted.

Although officials at the institutional level responded to Plaintiff's formal grievance on the merits (at least as far as Plaintiff's complaint against Centurion and the FDOC went), that is irrelevant. Of course, a prison system can waive strict compliance with its grievance procedures, in which case "a

---

[8] Alternatively, if these facts were disputed, the Court would make the same findings of fact at step two of the Turner analysis. The Court has no reason to doubt the credibility of FDOC's affiants or the accuracy and completeness of the grievance records.

procedural flaw ignored by a prison cannot later be resurrected by the District Court to defeat exhaustion." <u>Whatley I</u>, 802 F.3d at 1215. But "a prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance on the merits <u>at the last available stage of administrative review</u>." <u>Whatley II</u>, 898 F.3d at 1083 (emphasis added). "If a state's last administrative body denies a grievance for valid procedural reasons, the court is required to find that grievance unexhausted under the PLRA." <u>Whatley I</u>, 802 F.3d at 1216 (Vinson, J., concurring). FDOC's grievance regulations permit a grievance appeal to be returned without action for a variety of reasons, Fla. Admin. Code § 33-103.007(6)(d), including if "[t]he formal grievance was not received within 15 calendar days of the date on which the incident or action being complained about occurred, if an informal grievance was not filed pursuant to subsection 33-103.006(3), F.A.C," Fla. Admin. Code § 33.103.014(1)(e). That is what happened here. The FDOC Secretary returned Plaintiff's appeal without action because it explicitly found that his formal grievance was not filed within the 15-day window. Thus, although officials at the institutional level denied Plaintiff's formal grievance on the merits (more or less), FDOC did not waive the procedural defect because it did not decide the procedurally flawed grievance on the merits at the last stage of review. <u>Whatley II</u>, 898 F.3d at 1083.

The only facts in dispute are facts that do not change the conclusion that Plaintiff failed to properly exhaust administrative remedies. Relying on the

district court's decision in <u>Roca-Moreno v. Desouza</u>, Plaintiff argues that Section 33-103.011(1)(b) incorporates a type of delayed-discovery doctrine, under which the 15-day clock starts to run only when an inmate discovers his rights were violated. Plaintiff argues that Defendants failed to show when Plaintiff learned about the alleged wrongful delay in receiving DAA therapy. As such, Plaintiff argues, Defendants have failed to show when the 15-day period to file a formal grievance began to run and when it expired.[9] But this argument ignores that the FDOC itself explicitly determined that the 15-day period expired before Plaintiff filed his formal grievance.

Plaintiff's argument encounters three problems. First, it would require the Court to overrule or ignore FDOC's interpretation and application of its own grievance rules, which would raise concerns about federalism and comity. The FDOC does not interpret Section 33-103.011(1)(b) as incorporating a delayed-discovery doctrine, or if it does, it determined that the doctrine did not salvage Plaintiff's grievance. That much is reflected by the FDOC Secretary's decision that Plaintiff did not file his grievance within the rule's 15-day timeframe. A court should defer to the FDOC's application of its own grievance procedures if there is more than one reasonable interpretation of the grievance regulation. <u>Noles v. Brown</u>, No. 3:07-cv-31/LAC/MD, 2008 WL 680400, at *5 (N.D. Fla. Mar.

---

[9]    Plaintiff does not argue that administrative remedies were not "available." <u>See</u> <u>Ross</u>, 136 S. Ct. at 1862. His argument concerns how to interpret Section 33-103.011(1)(b).

6, 2008) (citing, inter alia, White v. Moore, 789 So. 2d 1118, 1120 (Fla. 1st DCA 2001)). "Courts must give deference to prison officials regarding [the] interpretation and application of their own grievance procedures so long as the procedures provide inmates with a meaningful opportunity to present grievances," and provided that the application of the grievance rules was not "clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right of access to the courts." Jones v. Frank, No. 07-cv-141-BBC, 2008 WL 4190322, at *3 (W.D. Wis. Apr. 14, 2008) (citations omitted). See also Simpson v. Greenwood, No. 06-C-612-C, 2007 WL 5445538, at *4 (W.D. Wis. Apr. 6, 2007) (courts generally defer to prison administrators' application of their own grievance rules, unless the rule itself serves no purpose other than to hinder a prisoner's access to the courts).

The Court cannot say that FDOC's interpretation and application of Section 33-103.011(1)(b) was clearly erroneous, arbitrary, or intended to thwart Plaintiff's access to the courts. Section 33-103.011 does not clearly support Plaintiff's argument that the 15-day grievance period begins to run only when a prisoner discovers a violation of his rights. The Court accepts Plaintiff's assertion that the action he grieved – i.e., the denial of treatment for HCV – was an ongoing course of conduct that cannot be reduced to a single date. Response to Motions to Dismiss at 6–7. However, the denial of treatment ended on March 16, 2018, when Centurion began to administer DAA therapy to

Plaintiff. The Court cannot say that the FDOC Secretary, in evaluating whether Plaintiff filed the grievance on time, acted arbitrarily by counting 15 calendar days from the last day Plaintiff was denied treatment in March 2018. Nor can the Court find that Section 33-103.011(1)(b) itself is onerous or confusing, or that it serves no purpose other than to create a procedural obstacle for the unwary. The 15-day timeframe serves a valid policy purpose: to encourage inmates to promptly grieve wrongdoings so that FDOC has an opportunity to resolve them quickly and efficiently. On these facts, the Court must defer to the FDOC's finding that Plaintiff's grievance was untimely.

Second, the text of Section 33-103.011(1)(b) does not support the position that the 15-day period runs from the date an inmate discovers a violation of his rights. The regulation simply states that the 15-day period to file a formal grievance runs from "[t]he date on which the incident or action being grieved occurred." Fla. Admin. Code § 33-103.011(1)(b)(2) (emphasis added). The grievance rules do not define the words "occur[red]," "incident," or "action," but the dictionary definitions of these terms do not suggest that they encompass a delayed-discovery principle. Merriam-Webster's Dictionary defines the word "occur" as follows: 1. "to be found or met with," or to appear (as in "This bird *occurs* in New England in the spring."); 2. "to come into existence," or to happen (as in "The accident *occurred* at 5 p.m."); and 3. "to come to mind" (as in "an idea

that has *occurred* to me.").[10] The Oxford English Dictionary says that "occur," when speaking of an event or incident, means "to happen, come about, take place, esp. without being arranged or expected."[11] Because Section 33-103.011(1)(b) refers to the occurrence of an "incident" or "action," the regulation uses "occur" in the sense of an event happening. So understood, an incident or action "occurs" when it comes into existence or takes place, not when an inmate discovers that his rights were allegedly violated. Likewise, the definitions of the words "incident" and "action" do not imply the existence of a delayed-discovery doctrine. The word "incident" means "an occurrence of an action or situation that is a separate unit of experience," or a "happening."[12] And the word "action," in its contextually appropriate sense[13], refers to "a thing done," behavior or conduct, or "the accomplishment of a thing usually over a period of time, in stages, or with the possibility of repetition."[14] Because the text of the FDOC's rule does not clearly create a delayed-discovery doctrine, the Court will not impose one on its own.

---

[10] https://www.merriam-webster.com/dictionary/occur (examples in original).

[11] https://www.oed.com/view/Entry/130192?redirectedFrom=occur#eid.

[12] https://www.merriam-webster.com/dictionary/incident.

[13] The word "action" is grouped with the word "incident," and words grouped together should be given a related meaning. United States v. Undetermined Quantities of All Articles of Finished and In-Process Foods, 936 F.3d 1341, 1352 (11th Cir. 2019) (Jordan, J., concurring) (citing Dole v. United Steelworkers of America, 494 U.S. 26, 36 (1990)).

[14] https://www.merriam-webster.com/dictionary/action.

The structure itself of Section 33-103.011 does not support Plaintiff's argument that the rule incorporates a delayed-discovery doctrine. Instead of a delayed-discovery rule, the grievance deadlines incorporate a feasibility exception. See Fla. Admin. Code § 33-103.011(2). The rule states:

> An extension of the above-stated time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority as defined in paragraphs 33-103.002(15)(b) and (c), F.A.C., or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in rule 33-103.014, F.A.C.

Fla. Admin. Code § 33-103.011(2). Notably, however, the FDOC did not grant Plaintiff such an extension and there is no indication he applied for one.

Third, Plaintiff's reliance on Roca-Moreno v. Desouza is misplaced. The court in Roca-Moreno rejected the plaintiff's argument that FDOC's grievance rules incorporate a delayed-discovery doctrine. Roca-Moreno, 2020 WL 7774726, at *4. The court explained: "Plaintiff cites to no authority for the proposition that the 20-day time period [for filing an informal grievance] starts upon discovery of the incident, rather than the date of the incident itself, and his argument is clearly contradicted by the express language of the Florida Administrative Code." Id. (citing Fla. Admin. Code § 33-103.011). "The only exception for extending the time to file a grievance is to file for leave to file an out-of-time grievance pursuant to Fla. Admin. Code § 33-103.011(2). A prisoner who has not sought to file an out-of-time grievance cannot be considered to have

exhausted his administrative remedies." Id. (citing Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999)). Although Roca-Moreno also analyzed the timeliness of the plaintiff's grievance under the delayed-discovery doctrine, see id. at *4–6, it apparently did so as an alternative analysis.

The uncontested facts establish that Plaintiff did not properly exhaust his administrative remedies. While Plaintiff disputes when he became aware that his HCV treatment had been delayed, this factual dispute is not material because Section 33-103.011 does not incorporate a delayed-discovery principle. The FDOC Secretary found that Plaintiff did not file his grievance within 15 days of when the incident or action occurred, and the Court cannot say that this application of the rule was clearly wrong. As such, the Court finds that Plaintiff cannot prevail at step one of the Turner analysis.[15]

### B. **Turner** Step Two

Alternatively, if Section 33-103.011(1)(b) does incorporate a delayed-discovery doctrine, and assuming the Court could disregard the FDOC

---

[15]    In his sur-reply, Plaintiff cites Kinard v. Centurion of Fla., LLC, No. 3:19-cv-490-MMH-JRK, 2020 WL 3542650 (M.D. Fla. Jun. 30, 2020), to support his argument that he complied with the 15-day deadline because the complained-of denial of treatment was an ongoing violation. (Doc. 50). Kinard is distinguishable for several reasons, most notably because there the FDOC did not rule that the grievance was untimely. Id. at *9. Moreover, Kinard filed his grievance and grievance appeal while the denial of HCV treatment was still ongoing, such that "[p]rison officials were still capable of resolving the ongoing deprivation of Kinard's medical care." Id. Here, in contrast, Plaintiff filed the grievance more than a year after the denial of treatment had ceased, so there was no longer an ongoing violation to remedy.

Secretary's ruling, the Court would have to proceed to the second step of the Turner analysis to resolve when Plaintiff knew or should have known his rights were violated. At step two, the Court still finds that Plaintiff did not properly exhaust available administrative remedies.

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific factual findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citations omitted). "After making specific findings of fact, the district court 'then decides whether under those findings the prisoner has exhausted his available administrative remedies.'" Whatley II, 898 F.3d at 1082 (quoting Turner, 541 F.3d at 1083). In resolving factual disputes about exhaustion, a district court may "consider facts outside of the pleadings ... so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376. A district court may consider such documents as affidavits and exhibits. See Whatley II, 898 F.3d at 1083 ("The district court permissibly weighed the evidence and credited the defendants' affidavits over Whatley's exhibits.").

In determining when a cause of action accrues for statute-of-limitations purposes, Florida follows the delayed-discovery doctrine. Hearndon v. Graham, 767 So. 2d 1179, 1184 (Fla. 2000) (citing City of Miami v. Brooks, 70 So. 2d 306, 309 (Fla. 1954)). "The 'delayed discovery doctrine generally provides that a

cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." Id. (citing Hillsborough Comty. Mental Health Ctr. v. Harr, 618 So. 2d 187, 189 (Fla. 1993); 35 Fla. Jur. 2d Limitations and Laches § 60 (1996)). "This principle … has been prescribed by statute for certain causes of action," 35 Fla. Jur. 2d Limitations and Laches § 60 (2021), such as fraud, product liability, and medical malpractice claims, see Fla. Stat. §§ 95.031(2), 95.11(3), (4), (7), but not for FDOC's grievance procedures. "The discovery rule applies to no causes of action other than those named in the applicable statutes." 35 Fla. Jur. 2d Limitations and Laches § 62 (2021) (citing Davis v. Monahan, 832 So. 2d 708 (Fla. 2002)). Nevertheless, assuming the rule applies to the FDOC's grievance rules, it means that Section 33-103.011(1)(b)'s 15-day period began to run when Plaintiff knew or reasonably should have known about the delay in receiving DAA therapy for HCV.

The facts stated in Plaintiff's own formal grievance and grievance appeal reflect that he knew, or reasonably should have known, of the alleged delay in receiving treatment for HCV well over 15 calendar days before he initiated the grievance process on June 26, 2019. In his formal grievance, he complained that FDOC, Corizon, and Centurion had been deliberately indifferent to his serious medical needs, i.e., HCV, because they had a policy or custom of denying HCV treatment that "was rooted in concerns of cost rather than [his] right to the

recognized standard of care….” Id. Plaintiff claimed that the delay in treatment "allowed the progression [of] this deadly virus to severely damage [his] liver." Id.; see also Am. Compl. ¶ 43 (stating that Plaintiff's liver disease had progressed to "serious cirrhosis" under Corizon's care, i.e., sometime before May 2016). Plaintiff stated that the deliberate indifference he complained of occurred "from January 2015 thru January 2018." FDOC Ex. 3 at 6. Plaintiff acknowledged in his formal grievance that he had been treated for HCV the previous year "due to a Federal Court Order," id. at 7, referring to the preliminary injunction order entered on November 17, 2017, in Hoffer v. Jones, 290 F. Supp. 3d 1292. In his grievance appeal, Plaintiff stated that "[w]hen Centurion of Florida took over in 2016, the FDOC had revised its HSB [Health Services Bulletin] to finally acknowledge[] [that] the standard of care for treating (HCV) inmates was with (DAA's)." FDOC Ex. 3 at 6. Referring again to Hoffer v. Jones, Plaintiff stated that Centurion "personnel never recommended evaluation by a specialist let alone treatment per the revised policy to [grievant], or any other (HCV) inmate here at U.C.I., until the Federal Court Order of November of 2017." Id.

Plaintiff's 2019 grievance documents acknowledge that he was treated for HCV the previous year and that the complained-of conduct occurred between 2015 and 2018. The documents are filled with indications that Plaintiff knew or reasonably should have known about the complained-of delay in treatment well

over 15 calendar days before June 26, 2019. Plaintiff states that FDOC updated its Health Services Bulletin in 2016 to reflect that DAA's were part of the standard of care for treating HCV. Plaintiff refers more than once to the 2017 preliminary injunction order in Hoffer v. Jones, which by Plaintiff's own account is what prompted Centurion personnel to start treating HCV-positive inmates at Union Correctional Institution. Plaintiff's references to the 2016 Health Services Bulletin and the 2017 court order reflect that he actually knew, or reasonably should have known, about the complained-of delay in receiving treatment months before he initiated the grievance process in June 2019. When Plaintiff finally received DAA therapy starting on March 16, 2018, it is fair to say he could have initiated the grievance process within 15 calendar days of that date. Notably, nowhere in his belated grievance or subsequent appeal did Plaintiff state that he had only recently discovered the facts supporting his complaint about the delay in treatment for HCV.

Therefore, even if the delayed-discovery doctrine applies to Section 33-103.011(1)(b), it cannot save Plaintiff's untimely grievance. The record establishes that Plaintiff failed to initiate the grievance process until more than 15 calendar days from when the incident or action being grieved occurred. The same is true regardless of whether 15 days are measured from the last day that FDOC and its contractor denied Plaintiff treatment for HCV or from the first day that Plaintiff knew or reasonably should have known about the complained-

of delay in treatment. Because Plaintiff did not properly exhaust his administrative remedies before he filed suit, the PLRA bars the instant § 1983 action. 42 U.S.C. § 1997e(a); Woodford, 548 U.S. at 92–93. Because the Court resolves Defendants' motions to dismiss on exhaustion grounds, it need not reach Centurion's arguments about whether Plaintiff failed to state a claim for relief. See Centurion Motion at 9–19.

## C. Disposition

While there is authority for dismissing a complaint with prejudice for failure to exhaust administrative remedies, Bryant, 530 F.3d at 1375 n.11, the custom in this Court is to dismiss a complaint without prejudice when the dismissal is for lack of exhaustion, see, e.g., Jacobs v. Henger, No. 5:20-cv-231-BJD-PRL, 2020 WL 3473289 (M.D. Fla. Jun. 25, 2020). That disposition makes sense here. Although any grievance Plaintiff might attempt to file regarding the denial of HCV treatment would be outside of Section 33-103.011(1)(b)'s 15-day window, the rule holds out the possibility that Plaintiff could apply for an extension under Section 33-103.011(2). FDOC could also waive compliance with its grievance procedures. Because attempting exhaustion is not necessarily futile, the Court will dismiss the Amended Complaint without prejudice.

## V.    Conclusion

In March 2018, the FDOC and Centurion began to administer a DAA to treat Plaintiff's HCV, consistent with the standard of care. Fortunately, by September 2018, Plaintiff no longer had detectable levels of the virus. But Plaintiff did not grieve the denial of treatment until June 26, 2019, and the FDOC Secretary ruled that Plaintiff's grievance was untimely. Because Plaintiff did not properly exhaust available administrative remedies before filing suit, the case is due to be dismissed. Accordingly, it is hereby **ORDERED:**

1. Defendants' motions to dismiss (Docs. 36, 37, & 40) are **GRANTED** on exhaustion grounds.

2. Centurion's Motion to Stay (Doc. 38) is **DENIED AS MOOT**.

3. Plaintiff William T. Stephens's Amended Complaint (Doc. 16) is **DISMISSED WITHOUT PREJUDICE** for lack of exhaustion. The Clerk shall enter judgment dismissing this case without prejudice, close the file, and terminate any pending motions.

4. The Court thanks pro bono counsel for his able service to Plaintiff.

**DONE AND ORDERED** in Jacksonville, Florida this 14th day of July 2021.

BRIAN J. DAVIS
United States District Judge

lc 19

Copies:
Counsel and parties of record